**This version includes the errata dtd 21Sep04-e**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1012

DENVER SIZEMORE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     September 3, 2004    )

*Sean Kendall*, of Boulder, Colorado, was on the brief for the appellant.

*Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel,* Deputy Assistant General Counsel; and *John D. McNamee*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, STEINBERG, and GREENE, *Judges.*

STEINBERG, *Judge*: Veteran Denver Sizemore (the appellant), through counsel, seeks review of a June 6, 2002, Board of Veterans' Appeals (BVA or Board) decision that denied his claim for Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD). Record (R.) at 1-12. The appellant and the Secretary each filed a brief, and the appellant filed a reply brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons set forth below, the Court will vacate the June 2002 BVA decision and remand the matter to the Board for further development and readjudication.

## I. Relevant Background

The veteran served on active duty in the U.S. Army from August 1966 to February 1969, including service in Vietnam in an artillery unit from January 1967 to January 1968. R. at 16, 294. He served with C Battery, 3rd Battalion, 18th Artillery, as a cannoneer. R. at 294. Service medical

records (SMRs) indicated that he suffered "[i]nternal derangement" of the left knee after having fallen off an armored personnel carrier while on perimeter guard duty on May 12, 1967. R. at 471, 475, 497. An SMR noted that he had "caught [his] foot in [the] latch as he fell and internally rotated (twisted) [his left] knee before he hit the ground." R. at 497. According to his SMRs, on May 18, 1967, he was hospitalized at the 249th General Hospital in Japan and on July 24, 1967, he resumed his duty as a cannoneer with the C Battery unit. R. at 294 (DA Form 20 – record of assignments); 504-07 (SMRs).

A February 1987 VA examination report included a diagnosis of the veteran as having, inter alia, a "[n]ervous condition which has been present since military service." R. at 122. The report noted the following: "[The veteran] cannot function very well when he is around a lot of people. He has trouble sleeping. He does not mention any specific Vietnam experiences which are a problem to him, if further evaluation is needed for this, he will have to have a psychiatric examination." R. at 122. The record on appeal (ROA) contains no record of another examination for the next six years. *See* R. at 122-92.

In February 1993, the veteran filed a claim with a VA regional office (RO) for service connection for, inter alia, a nervous disorder. R. at 184. VA medical records for that month noted that the veteran complained of, among other things, flashbacks and nightmares and his belief that they were related to his service in Vietnam. R. at 192, 195. He was hospitalized in a VA facility in April 1993 for an "[a]djustment disorder", and VA hospital records noted a discharge diagnosis of, inter alia, "features of [PTSD]". R. at 267-69. On April 29, 1993, the VARO denied service connection for a nervous condition. R. at 239, 241-42.

On August 30, 1994, the veteran filed a claim for service connection for PTSD. R. at 244. The following month, the RO requested additional information from the veteran regarding the incidents in service that he felt led to PTSD. R. at 247. In October 1994, he submitted, in support of his PTSD claim, a statement as follows:

> On or about the 24th of July 1967 at 1:00 AM in the morning we w[ere] struck by Viet Kong [sic] mortar fire. There w[ere] 17 wounded. Sgt Ward and Spc. 4 Prior. I don't know or forgot the[ir] first names. There w[as] fire all over. [Three] of our guns were knocked out[;] every thing was destroyed. About [the] 8th of April 1967 we were under another attack about 80 miles north of Chu-Lui.

2

I don't recall the L[anding]-Z[one;] both these attacks took place at the same L-Z. There were 4 of my unit hurt but I don't recall the[ir] names. We were all in the 1st of the 25th infantry division heavy art[illery] company.

[I]n May 1967 I don't recall the date[,] we were struck again by mortar fire[.] I was knocked off an American Patrol Carrier about 10:30 at []night. The next morning I was sent to Cam Ron [sic] Bay. I stayed there for about 3 days and then [was] sent to North Camp Drake hospital in Tokyo Japan[, where] I stayed 63 day[s] for my left knee[.] After the 63 days in the hospital I went back to Viet Nam at our Camp Base which was Chu-Lui. I stayed there for 22 days and then went back to my unit.

. . . I feel what I [did] in Viet Nam really tore my world and my life apart. I was a gunner on a[n] 8" [s]elf[-p]ropel[l]ed gun and also a 175 [s]elf[-p]ropel[l]ed [gun]. I know in my heart I killed a lot of people in Viet Nam but I don't really care. It's on my mind all the time but it's something I have to live with.

R. at 260-61.

In January 1995, a VA psychiatrist, following a VA compensation and pension (C&P) examination, diagnosed the veteran as having "moderately severe" PTSD. R. at 298-300. At that time, the veteran noted that he had been nervous since he was in the service. R. at 298. He stated that he was a gunner in a self-propelled howitzer and a guard, and related that he was usually on reconnaissance missions, had seen casualties, including the death of an acquaintance, was subject to close hits, and was knocked off his gun carrier and hurt his left knee. R. at 299. In a May 1995 C&P examination report, a VA psychologist, Robert Tureen, Ph.D, examined the veteran and concluded that there was "no evidence on which to make a diagnosis of [PTSD]" and that "[m]ost of the problems reflected in the responses to test material suggest more of a characterological disturbance". R. at 304. The report of that examination related that the veteran had stated that he had been "blown off" a vehicle by a mortar shell and had seen numerous people killed while he was in Vietnam and that this still bothers him today. R. at 302-03.

3

In August 1995, in response to the RO's request for information concerning the veteran, the U.S. Army Environmental Support Group (ESG) informed the RO that both Chu Lai and Landing Zone English were attacked in 1967, but that, in order for the ESG to provide further research concerning specific combat incidents, the veteran must provide additional information, including specific dates, type, and location of incidents, full names of casualties, and unit designations. R. at 306. The ESG noted that the RO had not included the veteran's Vietnam tour dates or his completed unit designation to the company level. R. at 307. The ESG also noted that morning reports can be used to verify daily personnel actions such as wounded in action, killed in action, and missing in action, and that such reports could be obtained from the National Personnel Records Center (NPRC) in St. Louis, Missouri. R. at 306. The ESG further noted that "[s]tressors such as Mr. Sizemore['s] killing many people or his being knocked off a military vehicle during an enemy attack are seldom found in the combat records." *Ibid*.

In September 1995, the RO denied service connection for PTSD. R. at 385-86. The RO decision noted that the evidence was inadequate to establish that a stressful experience sufficient to cause PTSD actually occurred. *Ibid*. The veteran filed a Notice of Disagreement (R. at 390) in December 1995, and the RO issued a Statement of the Case (SOC) in March 1996. R. at 406. At a VA hearing in May 1996, the veteran testified under oath. R. at 421-31. In August 1996, he underwent a third VA C&P examination for his mental disorder. R. at 450. The examining VA psychiatrist diagnosed the veteran as having PTSD and noted the following: "The patient does seem to have [PTSD] which seems to be service related." R. at 452. The RO issued a Supplemental SOC (SSOC) in December 1996. R. at 454.

In June 1997, the RO requested further information from the ESG (renamed the "U.S. Armed Service Center for Research of Unit Records" (USASCRUR)) in order to verify the veteran's claimed stressors, and the RO provided more detailed information about the veteran's unit and alleged stressor incidents. R. at 462. In December 1997, the USASCRUR responded, enclosing "Operational Reports of Lessons Learned" (ORLLs) for the period November 1, 1966, through January 31, 1968. R. at 517. (The ORLLs showed the locations, missions, and combat activities of units, including Battery C; although the reports listed casualty statistics, no names were provided. *Ibid*.) The USASCRUR also enclosed a morning report dated June 25, 1967, for the veteran's

4

Battery C unit, and pointed out that the ORLLs and morning reports did not document a combat action occurring on July 24, 1967. *Ibid.* The USASCRUR noted, however, that the reports did document that on June 24, 1967, an enemy attack resulted in Battery C's sustaining one killed in action and 49 wounded in action. R. at 517 (USASCRUR cover letter), 537 (ORLL for period ending July 31, 1967), 567-69 (morning report dated June 25, 1967 ). The USASCRUR noted that morning reports can be ordered from the NPRC in St. Louis, Missouri. R. at 517.

The ORLL for the quarterly period beginning February 1, 1967, and ending April 30, 1967, noted, inter alia, that the veteran's unit had participated in Task Force (TF) OREGON and that his unit "reinforc[ed] the [artillery] fires" of another Battalion. R. at 523-24. The ORLL for the period between May 1 and July 31, 1967, described operations on specific days. R. at 536-37. For example, it described the June 24, 1967, incident in which the veteran's unit was attacked resulting in one casualty and many wounded in action. R. at 537. Of the eleven other operations described during that period, none included the receipt of enemy fire by the veteran's unit. *See* R. at 536-37.

In a November 1998 C&P examination report by a VA psychiatrist, the veteran was diagnosed as having, among other things, a "probable personality disorder". R. at 794. Although it did not include a diagnosis of PTSD for the veteran, the report noted that he had stated that "he probably killed eight to ten enemy soldiers" and "saw eleven of his friends killed, mostly by mortars but also by small arms fire" and that the veteran noted that "the worst thing that happened to him was that he had to engage and kill enemy soldiers, but he felt that it was justifiable by the fact that it was a combat situation and it was 'either them or me'." R. at 792. The report noted that the veteran's medical history was positive "for left[-]knee trouble secondary to being 'blow[n] off an APC' in Vietnam." *Ibid.*

In January 1999, the RO issued another SSOC. R. at 797-800. In his Substantive Appeal to the Board, the veteran stated: "The [SSOC] states the combat was on 6/24/67 and that is correct as I was returned to the unit two days before the attack." R. at 821. In an August 6, 1999, decision, the Board denied service connection for PTSD. R. at 835-42. The Board concluded that the veteran did not engage in combat with the enemy and that there was no credible supporting evidence confirming the claimed stressors. R. at 836. The veteran appealed the 1999 Board decision to this Court (No. 99-1989), which vacated that decision and remanded the matter to the Board for readjudication

in light of 38 U.S.C. § 5103(a), as amended by the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096, 2096-97, and this Court's opinion in *Holliday v. Principi*, 14 Vet.App. 280, 286 (2001), *overruled in part by Kuzma v. Principi*, 341 F.3d 1327, 1329 (Fed. Cir. 2003) (citing to *Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002), and *Bernklau v. Principi*, 291 F.3d 795, 806 (Fed. Cir. 2002)). R. at 920-21 (Court order dated April 27, 2001). Before the Board decision now on appeal, VA's General Counsel issued on October 18, 1999, a precedent opinion that, among other things, (1) defined the phrase "engaged in combat with the enemy" as used in 38 U.S.C. § 1154(b); and (2) explained what evidence should be considered satisfactory proof that a veteran engaged in combat with the enemy. VA Gen. Coun. Prec. 12-99 (Oct. 18, 1999) [hereinafter G.C. Prec. 12-99].

In the June 2002 BVA decision here on appeal, the Board denied service connection for PTSD, after finding that (1) by a preponderance of the evidence, the veteran did not engage in combat with the enemy while serving in Vietnam (R. at 6), (2) the record contained no credible supporting evidence that confirmed any of the veteran's claimed stressors (R. at 2), and (3) the record contained no diagnosis of PTSD related to verified stressors (*ibid.*). In making its findings, the Board relied on G.C. Prec. 12-99. The Board also concluded that VA had complied with the VCAA, that the record was complete and adequate for appellate review, and that no further action was necessary to meet the requirements of the VCAA. R. at 3.

## II. Contentions of Parties

The appellant urges the Court to reverse as clearly erroneous the Board's finding that he did not engage in combat with the enemy and to remand the matter to the Board to apply the combat presumption of section 1154(b). Brief (Br.) at 15-18. He argues that a unit may engage in combat by "[s]helling the enemy with thousands of rounds of artillery". *Id.* at 12. He notes that combat is defined as "active fighting in a war" and argues that he was actively fighting by firing his weapon. *Id.* at 17 (quoting MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 262 (9th ed. 1990)). He contends that, contrary to the Board's finding, counterfire is not a necessary element of the definition of combat. *Id.* at 17. The appellant also argues that the Board failed to provide an adequate statement of reasons or bases for its conclusion that he did not engage in combat with the

enemy. Br. at 18. He contends that the Board "completely ignored" his testimony that he had engaged in combat with the enemy. Br. at 19 (citing to R. at 260). He further argues that VA failed to assist him by not attempting to verify his claimed in-service stressors (Br. at 13, 19-20) and failed to comply with the section 5103(a) notice provisions enacted by the VCAA (Br. at 22).

The Secretary states that he accepts the appellant's statement of facts. Br. at 2 (citing Appellant's Br. at 1-12). He asserts that this appeal turns on whether the appellant was a combat veteran and argues that the appellant had not engaged in combat because he was never subjected to enemy fire. Br. at 4-5, 12. He contends that the Board provided an adequate statement of reasons or bases in support of its decision and that the appellant's account of his Vietnam experiences are contradicted by official records. Br. at 12. The Secretary further contends that any additional section 5103(a) notice would not assist the veteran. Br. at 13. He also argues that if the Court should find that the VCAA requirements have not been met, the Court should hold that this noncompliance was nonprejudicial error. Br. at 14.

### III. Analysis

#### A. Applicable Law and Regulations

To support a claim for service connection for PTSD, a claimant must present evidence of (1) a current diagnosis of PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between the current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f) (2003); *see Cohen (Douglas) v. Brown*, 10 Vet.App. 128, 138 (1997); *see also* 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 (2003) (Schedule of ratings for mental disorders – PTSD). Where a current diagnosis of PTSD exists, the **sufficiency** of the claimed in-service stressor is presumed. *See Cohen*, 10 Vet.App. at 144. However, credible evidence that the claimed in-service stressor **actually occurred** is also required. 38 C.F.R. § 3.304(f). Specifically, 38 C.F.R. § 3.304(f) provides, in pertinent part:

> Service connection for [PTSD] requires medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) . . . ; a link, established by medical evidence, between current symptoms and an in-service stressor; and **credible supporting evidence that the claimed in-service stressor occurred**. Although service connection may be established based on other in-service stressors, the following

provisions apply for specified in-service stressors as set forth below:

> (1) If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the ***veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor***.

38 C.F.R. § 3.304(f) (emphasis added). (Although § 3.304(f) was amended during the pendency of this claim at VA, the credible-supporting-evidence requirement at issue here has remained unchanged. *See* 67 Fed. Reg. 10,332 (Mar. 7, 2002); 64 Fed. Reg. 32,807, 32,808 (June 18, 1999).) The "engaged in combat" provision of this regulation was derived from 38 U.S.C. § 1154(b), which provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service[]connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[]connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b); *see Arms v. West*, 12 Vet.App. 188, 194 (1999); *Cohen*, 10 Vet.App. at 145-46.

Accordingly, if the veteran engaged in combat and the claimed stressor is combat related, the veteran's lay testimony alone generally is sufficient to establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f). If, however, the claimed stressor is not combat related, its occurrence must be corroborated by credible supporting evidence. *See Cohen*, 10 Vet.App. at 142. (citing § 3.304(f)). When a claim for PTSD is based on a noncombat stressor, "the noncombat veteran's testimony alone is insufficient proof of a stressor." *Moreau v. Brown*, 9 Vet.App. 389, 396

8

(1996). Corroboration does not require, however, "that there be corroboration of every detail including the appellant's personal participation in the identifying process." *Suozzi v. Brown*, 10 Vet.App. 307, 311 (1997); *see also Pentecost v. Principi*, 16 Vet.App. 124, 128 (2002) (holding that Board "erroneously insisted that there be corroboration of the veteran's personal participation").

The Board's finding of noncombat status is a finding of fact that the Court reviews under a "clearly erroneous" standard of review pursuant to 38 U.S.C. § 7261(a)(4). *See Moreau*, 9 Vet.App. at 395. Whether a veteran has submitted sufficient corroborative evidence of his or her claimed in-service stressors is also a factual determination that is reviewed under this standard. *Pentecost*, 16 Vet.App. at 129. Under this deferential standard, if there is a "'plausible' basis" in the record, "'viewed in its entirety'", for the factual determinations of the BVA, the Court cannot overturn them. *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see also Mariano v. Principi*, 17 Vet.App. 305, 313 (2003).

Moreover, the Secretary is required by 38 U.S.C. § 5107(b) to consider all information and lay and medical evidence of record, and, under the section 5107(b) "equipoise standard", to find for the claimant unless "a fair preponderance of the evidence is against the claim[ant's position]." *Gilbert*, 1 Vet.App. at 54-55; *see also Mariano*, 17 Vet.App. at 313-17 (reversing two BVA findings of fact as "clearly erroneous application[s] of the section 5107(b) equipoise standard").

The Board, too, must consider all evidence of record and consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd*

9

*per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

## B. Application of Law to Facts

The Board recognized that the veteran had been diagnosed with PTSD and determined that the case turned on whether he had either engaged in combat during service or experienced a verifiable in-service stressor. R. at 5. In determining whether the appellant "engaged in combat with the enemy", the Board relied on a VA General Counsel (GC) precedent opinion, G.C. Prec. 12-99, and stated that it requires that "the veteran have taken part in a fight or encounter with a military foe or hostile unit or instrumentality." R. at 6. The Board found that "the preponderance of the evidence is against a finding that the veteran participated in combat with the enemy." R. at 6. The Board stated that "[a]lthough the veteran was assigned a combat-related [military occupational specialty], there is no evidence that he participated in combat, within the meaning of the General Counsel opinion." R. at 6. Specifically, the Board stated:

> While the records obtained by USASCRUR for the period of the veteran's assignment to Battery C, 3rd Battalion, 18th Brigade indicate that the unit engaged in numerous direct combat support missions, it *received* no counterfire or enemy incursions at any time the veteran was present. . . . Most clearly, while the veteran's unit was the target of an enemy mortar and recoilless rifle attack on 24 June 1967, the veteran was then hospitalized in Japan.

R. at 6 (emphasis added). Again referring to G.C. Prec. 12-99, the Board stated that "[t]he mere fact that the veteran served as a cannoneer cannot constitute a finding that the veteran engaged in combat when the record contains no *ordinary* indications of combat involvement." R. at 11 (emphasis added).

In arguing that the Board provided an adequate statement of reasons or bases for its determination that the appellant did not engage in combat, the Secretary asserts that "a determination . . . whether [the appellant] engaged in combat – when it is clear that he fired artillery but the enemy did not fire at him – would not require . . . an exhaustive statement of reasons or bases." Br. at 11. He maintains that the uncontested fact that the appellant was not subjected to enemy fire is determinative of the combat issue. Br. at 4, 5. The appellant, however, contends that he did engage in combat with the enemy because he fired artillery rounds into enemy positions. Br. at 15.

10

The Court concludes that the Board erred to the extent that its determination that the appellant had not engaged in combat was based on the sole criterion of the appellant's not having received fire from the enemy. The Board erred insofar as it based that determination on G.C. Prec. 12-99. That opinion does not state that the meaning of the phrase "engaged in combat with the enemy" requires that a veteran have received fire. The GC opinion defines "engaged in combat with the enemy", as used in 38 U.S.C. § 1154(b), as requiring the veteran to have "personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality." G.C. Prec. 12-99 at ¶ 4. Significantly, that opinion also stated the following: "Evidence that the veteran participated in *attacking or* defending an attack of the enemy would ordinarily show that the veteran had 'engaged in combat,' but that general description would not be exhaustive of circumstances which may, in individual cases, be found to constitute engagement in combat." *Id*. at ¶ 6 (emphasis added). The Court notes that the GC opinion drew this conclusion from an August 17, 1932, VA Administrator's Decision No. 100, from which G.C. Prec. 12-99 quoted the following: "[T]he phrase 'incurred in combat,' as used in the Act of June 30, 1932, would generally include 'a disability incurred as a direct result of injury caused by an instrumentality of war while [the veteran] was actually engaged in *attacking*, defending *or* sustaining an attack of the enemy.'" G.C. Prec. 12-99 at ¶ 5 (emphasis added). Indeed, this definition was part of the background for the enactment of section 1154(b) in 1941. *See* G.C. Prec. 12-99 at ¶ 5; *see also Arms*, 12 Vet.App. at 197 (noting legislative history for section 1154(b)). This GC precedent opinion was binding on the Board, 38 U.S.C. § 7104(c); 38 C.F.R. § 14.507(b), but the Board does not appear to have followed it.

Although the Board correctly recognized that, pursuant to that GC opinion, the determination whether a veteran was in combat must be made on a case-by-case basis, the Board disregarded the above GC opinion explanation as to participation in "attacking", which could cover the appellant's circumstances. The ORLL for the February 1 to April 30, 1967, quarter showed that the appellant's unit had been responsible for shooting artillery fire into enemy areas and that his unit killed numerous Viet Cong soldiers. R. at 526-28. Specifically, the ORLL noted that during the night of February 18-19, Battery C, firing in support of another battalion, "received credit for 25 V[iet]C[ong] KIA [(killed in action)]." R. at 526. That ORLL also identified how the veteran's unit was

11

"[o]rganiz[ed] for [c]ombat" in connection with Battery A and Battery B of his artillery unit for various dates in February and April. R. at 526-27. The ORLL further noted that in support of TF Oregon (April 17-April 30, 1967), the artillery fire was responsible for, among other things, the following: (1) 61 structures and huts destroyed; (2) one base camp destroyed; (3) two bridges destroyed; (4) 21 boats sunk; (5) 101 "KIA (probable)"; and (6) 4 wounded in action. R. at 527. The ORLL noted that the veteran's Battery C guns fired more than 12,000 rounds during this three-month reporting period. R. at 528.

The Board's conclusion as to whether the appellant was engaged in combat was thus based on an incomplete statement of reasons or bases. *See Cohen* and *Gilbert*, both *supra.* Accordingly, the Court will vacate the Board decision and remand the matter to the Board for it to readjudicate whether the appellant engaged in combat. In this regard, the Board must address the meaning of the term "attacking" as used in G.C. Prec. 12-99 and explain whether the evidence, including the appellant's account, the ORLLs and the morning reports, supports a determination that he had been involved in combat. *See Gaines v. West*, 11 Vet.App. 353, 359 (1998) (finding error where, in analyzing whether appellant had engaged in combat, Board partly relied on lack of award of medals showing combat service but neglected to address, inter alia, appellant's sworn testimony that he had engaged in combat); *Suozzi*, 10 Vet.App. at 310-11 (concluding that corroboration of claimed in-service stressor does not require corroboration of every detail, including appellant's personal participation in identifying process); *see also Pentecost*, *supra*.

The Court notes that, contrary to the appellant's assertions, the Board did consider his sworn lay testimony in its determination that he had not engaged in combat. The Board considered his testimony for both the combat and the stressor-corroboration issues. R. at 7, 9, 11. In its discussion of whether the appellant experienced an in-service stressor, the Board stated: "In the absence of appropriate military citations or other evidence sufficient to establish that the veteran engaged in combat with the enemy, the Board *has also considered the veteran's testimony* and all corrobative evidence." R. at 7 (emphasis added). The Board noted that the appellant "provided further descriptions of his alleged stressors at VA examinations and in his personal hearing testimony" and described some of the testimony from the hearing in May 1996. R. at 8; *see* R. at 421-31 (May 1996 hearing transcript). The Board also described the veteran's description of stressors in his October

12

1994 statement; the August 1995 ESG letter; and VA examination reports from January 1995, May 1995, and November 1997. R. at 7-10. Based on that evidence, the Board concluded that there was no independent evidence to corroborate under § 3.304(f) that any claimed in-service stressor had actually occurred. The Board also concluded that "based on the evidence, the record does not include sufficient evidence to establish that the veteran engaged in combat with the enemy during service [so as] to invoke [section] 1154(b) and the presumption for combat service." R. at 9. Nevertheless, as discussed above, a remand is required based on the Board's failure to provide an adequate statement of reasons or bases in light of the GC opinion's conclusion regarding the meaning of the term "engaged in combat".

In readjudicating on remand the appellant's claim for service connection for PTSD, if the Board again determines that the appellant did not engage in combat, the Board will be required to apply, inter alia, the provisions of 38 C.F.R. § 3.304(f) and specifically those pertaining to noncombat veterans. *See Moran v. Principi*, 17 Vet.App. 149, 155 (2003). In this regard, as to the appellant's contention that VA failed to fulfill its duty to assist him in the verification of his alleged stressors, the Court disagrees with the Board's determination that VA made all reasonable efforts to verify the veteran's claimed PTSD stressors. R. at 3. To the contrary, the Court concludes that the appellant was not advised adequately by VA as to the types of information that may help to verify his claimed in-service stressors. *See* 38 U.S.C. § 5103A. In particular, at the May 1996 VA hearing (R. at 421-31) VA failed to advise the appellant that he could submit corroboration in the form of "buddy statements" as to some of the occurrences that he alleged were in-service stressors. *See* 38 C.F.R. § 3.103(c)(2) (1995) (providing that VA hearing officer must, inter alia, suggest submission of evidence that claimant "may have overlooked and [that] would be of advantage to the claimant's position"); *Dixon v. Derwinski*, 3 Vet.App. 261, 263 (1992) (citing *Garlejo v. Derwinski*, 2 Vet.App. 619, 620-21 (1992) (concluding that VA breached duty to assist appellant by neglecting to inform him that he could ask fellow soldiers to write letters in support of his claim)); *see also Moran*, 17 Vet.App. at 159 (citing *YR v. West*, 11 Vet.App. 393, 397-99 (1998) (concluding that, in PTSD case, "credible supporting evidence" is not limited to service department records, but can be from any source and holding that Board's failure to discuss written statement of appellant's sister was prejudicial error)); *Cohen*, 10 Vet.App. at 145 (noting that occurrence of stressor had been

13

established by Board's acceptance of corroborative statement of veteran's comrade as to exposure to frequent mortar and rocket attacks).

At the May 1996 hearing, the appellant testified under oath that he was a gunner whose unit provided artillery support for infantry units stationed in the field and that when his unit moved from one landing zone to another "we would have to go in and secure the area our own self." R. at 422. He explained: "It was very difficult. I mean there were a lot of, a lot got killed there. We never had anybody to go in front of us. We had to go in by ourselves and do it." R. at 422. He further testified that on July 24, 1967, while he was with the 25th Infantry Division, his firebase came under attack and 17 individuals were killed, including his first sergeant, who was the battery commander. *Ibid*. The Court notes that a buddy statement may corroborate, for example, the appellant's claimed participation on July 24, 1967; any doubt about his having functioned as part of artillery support for infantry units; and/or his statement concerning his having been blown off a vehicle and injuring his knees (R. at 260-61, 302-03, 422-23).

The Court also concludes that there is some merit to the appellant's argument that VA failed to assist him by not attempting to verify whether servicemen Prior or Ward were casualties during the Vietnam Conflict (one of his claimed stressors (Br. at 13, 19-20)). In its decision, the Board noted that the appellant had described an attack in July 1967 in which "his First Sergeant [Ward] and a Specialist [Prior] were killed" and that his attorney had suggested that VA should attempt to verify the deaths of these servicemen. R. at 9. The Board, however, determined that because "the alleged [July 1967] attack itself was not verified, verification of deaths alleg[ed] to be due to that attack is not necessary." R. at 9. Under the duty to assist, the Secretary is required to assist a claimant to obtain relevant records. 38 U.S.C. § 5103A(c)(3) (requiring Secretary to assist claimant in obtaining, among other things, records "held by any Federal department or agency that the claimant adequately identifies and authorizes the Secretary to obtain"); *see* 38 C.F.R. § 3.159(c)(3) (2003). The Court concludes that if the appellant's assertion regarding the deaths was that his ***knowledge*** of the deaths was a stressor, then VA had a duty to assist the appellant in attempting to verify the deaths. If, however, the appellant's assertion is that he ***witnessed*** their deaths, then VA has an obligation to attempt to verify the deaths only if there is evidence that the appellant was present when those deaths allegedly occurred. In addition, the Court notes that although the appellant concedes that he was a

14

patient at the 249th General Hospital in Japan from May 18, 1967, to July 23, 1967 (Br. at 3), it is possible that if the deaths of servicemen Ward and/or Prior occurred on a date other than June 24 (the date identified in the ORLLs as the date on which the appellant's unit was attacked), that may indicate that the appellant's unit was under attack on a date not mentioned in the ORLLs and morning reports; if so, VA had a duty under the statute and regulation to attempt to obtain any relevant documents in this regard. Accordingly, if combat status is not found on remand, the Board must seek to clarify the basis for this asserted in-service stressor and then take appropriate action.

On remand, if the Board determines that the appellant engaged in combat or that there is credible supporting evidence that the claimed in-service stressor occurred, then VA is to provide a current examination of the appellant. *See* 38 U.S.C. § 5103A; *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991) (concluding that "fulfillment of the statutory duty to assist here includes the conduct of a thorough and contemporaneous medical examination"). The Court notes that the most current VA examination is dated in November 1998 and contains notations by the VA psychiatrist that the appellant's claimed stressors have not been substantiated. As to the claimed stressors, the examiner stated the following:

> [The veteran's] stressors in Vietnam apparently have not been substantiated and [al]though it is likely that he was involved in some combat activities, it seems a bit unusual that an artillery man would have personally killed eleven enemy soldiers unless they were being over[]run. In an action of that nature, I think [it] would probably have resulted in either some award being given to him or at least some documentation being discoverable with respect to that unit's heavy combat activity. . . . When I asked him if he directly observed [his 11 friends killed], he states that he did directly observe it. Again, that seems to be a bit of either an exaggeration or a horrible experience which should again be discoverable through the records.

R. at 795. To the extent that the examining psychiatrist is expressing an opinion on whether the appellant's claimed in-service stressors have been substantiated, that is a matter for determination by the Board and not a medical matter. *Cf. Mariano*, 17 Vet.App. at 312 (noting that it is impermissible for VA to obtain medical opinion if a purpose for undertaking such additional development was to obtain evidence against appellant's case); *Moreau*, 9 Vet.App. at 396 (concluding that credible supporting evidence of in-service stressor cannot consist solely of medical

15

statement of VA examining psychiatrist that related veteran's PTSD to events experienced in service and that expressly found veteran's recitation of facts to be credible); *see also Cohen*, 10 Vet.App. at 145 (citing *Moreau*, *supra*) (noting that opinion by mental health professional based on postservice examination of veteran cannot be used to establish occurrence of stressor). A new VA examination would remove whatever taint there may be from this psychiatrist's overreaching in his report. *Cf. Colayong v. West*, 12 Vet.App. 524, 534-35 (1999) (concluding that medical opinion had been obtained by tainted process where engagement letter from RO that led to medical opinion contained questions that were "fatally flawed" in that they suggested answer and limited field of inquiry by expert, and ordering that new medical opinion be obtained on remand).

The Court notes that on remand the Board's determinations on the questions of combat status and corroboration of stressors (if needed) must be made consistent with the equipoise standard of 38 U.S.C. § 5107(b), and the appellant's claim is to be denied on the merits only if the evidence preponderates against the claim. *See Gilbert,* 1 Vet.App. at 54; *see also Mariano*, 17 Vet.App. at 313-17.

## IV. Conclusion

On the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), the Court will vacate the June 2002 Board decision and remand the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1154(b), 7104(a), (d)(1); 38 U.S.C. §§ 5103A, 5107; 38 C.F.R. §§ 3.103(c)(2), 3.159, 3.304(f), 4.130, DC 9411; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this order and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that section 302 of Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658, predecessor of section 7112, applies to all elements of a claim remanded by the Court or Board), and in accordance with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the VCAA will apply. *See* 38 U.S.C. 5100-5103, 5103A,

5106, 5107; *Fortuck v. Principi*, 17 Vet.App. 173, 181 (2003); *Charles*, 16 Vet.App. at 374; *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002); *see also Pelegrini v. Principi*, 18 Vet.App. 112 (2004). Also, on remand, the appellant will be free to submit additional evidence and argument on the remanded claims, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.