http://www.va.gov/vetapp16/Files2/1617315.txt

Citation Nr: 1617315 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 12-20 484 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon

THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD). 

REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs

ATTORNEY FOR THE BOARD

L. B. Cryan, Counsel

INTRODUCTION

The Veteran served on active duty from February 1961 to December 1964. 

This case is before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. In that rating decision, the RO denied entitlement to service connection for PTSD.

In August 2015 the Board remanded the case to the RO for further development and adjudicative action. In that remand, the Board recharacterized the issue on appeal to include all potentially applicable psychiatric conditions because the scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. See Clemons v. Shinseki, 23 Vet. App. 1 (2009). 

This appeal was processed using the Virtual Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

As noted in the August 2015 remand, the issues of entitlement to an earlier effective date for the Veteran's service-connected disabilities have been raised by the record in January 2014 and June 2015 statements, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are once again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran did not engage in combat with the enemy during service, and his PTSD diagnosis is not shown to be in conformance with the DSM IV or V criteria, and it is not based on a corroborated stressor.

2. The Veteran failed to report to a VA Compensation and Pension examination which was necessary to decide his claim; and, he did not provide good cause for his failure to report. 

3. An acquired psychiatric disorder was not incurred in service is not shown to be related to any incident of service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for PTSD are not met. 38 U.S.C.A. § § 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304(e) (2015).

2. An acquired psychiatric disorder was neither incurred in nor aggravated by service. 38 U.S.C.A. § § 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.655 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

At the outset, VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). By correspondence dated in October 2009, VA notified the Veteran of the information needed to substantiate and complete his claims, to include notice of the information that he was responsible for providing, the evidence VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. It is not alleged that notice was less than adequate.

The Veteran's service treatment records and service personnel records are associated with the record and pertinent private and VA medical records have been secured. Records from the Vet Center have also been considered, as well as the Veteran's lay statements and documents provided by him. He provided stressor statements, but it was determined that the information he provided was too general, and insufficient to submit to the U.S. Army and Joint Services Records Research Center (JSRRC) and/or insufficient to allow for a meaningful research of Air Force or National Archives and Records Administration (NARA) records. See 2009 VA Memorandum of a formal finding of a lack of information required to verify stressors in connection with the claim for service connection for PTSD. This memo also notes that the Veteran's personnel file is negative for stressors and/or evidence of engagement in combat. 

The case was remanded in August 2015 so that the Veteran could be examined. The purpose of the examination was to have a VA mental health examiner indicate whether the Veteran had a current diagnosis of PTSD in accordance with 38 C.F.R. § 4.125(a) (i.e., which conformed to the Diagnostic and Statistical Manual (DSM) of Mental Disorders, presumed to include the adequacy of the PTSD symptomatology and the sufficiency of a claimed in-service stressor), and if so, opine as to what stressors the diagnosis was based upon. In addition, the examiner was asked to identify any acquired psychiatric disorders other than PTSD, and provide an opinion as to the likely etiology of each. The Veteran was notified in September 2015 correspondence that such an examination would be scheduled on his behalf. The September 2015 correspondence also provided notice that if he failed to report to the examination without good cause, that his claim would be rated based on the evidence of record, or might be denied. The letter also provided examples of good cause such as illness or hospitalization, and death of a family member. 

A December 3, 2015 email exchange between two VA employees reveals that the Veteran was notified of his scheduled examination; however, later that day, he called back to say that he wanted his claim determined based on the information then of record, and did not want to go to the examination scheduled for later that month. The only cause provided was that he is "tired of the runaround." 

Thus, to the extent possible, the AOJ has substantially complied with the remand directives, as all development possible has been accomplished. Accordingly, a new remand is not required to comply with the holding of Stegall v. West, 11 Vet. App. 268 (1998). See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (Remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

The appellant has not identified any pertinent evidence that remains outstanding with respect to this claim. VA's duty to assist is met.

The Veteran seeks service connection for PTSD. He essentially maintains that he developed PTSD as a result of serving in the Air Force Security Service as a Russian Linguist and Analyst in Berlin from July 1962 to December 1963; and on a remote location in St. Lawrence Island, Alaska from February 1964 to December 1964. In various statements of record, the Veteran has indicated that this service in Berlin during the Cold War and on St. Lawrence Island (only 100 miles from Russia) during those unsettled and troubled times led him to fear for his life, and his sanity. He reportedly became depressed and fearful. The environment was barren, frigid and led to suffering from continual indoor living in a desolate area. The lack of light, or the prolonged light (depending on the season) was also a contributing factor. The Veteran also reported that there was excessive waste material being dumped in an unsanitary manner in a nearby bay, and believes that this pollution contributed to the physical and psychological illnesses of the men there. The Veteran reported that many soldiers had nervous breakdowns and he became lethargic and depressed. 

Currently, the Veteran reports intrusive thoughts and occasional nightmares of his experiences on St. Lawrence Island. He avoids all reminders associated with trauma and desolate environments. He feels estranged from others, and has a restricted range of affect. In addition, the Veteran reported irritability and hypervigilance. See September 2012 memorandum from E.M., a Salem Vet Center psychologist. 

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty or for aggravation of preexisting injury suffered or disease contracted in the line of duty. 38 U.S.C.A. 
§§ 1110, 1131; 38 C.F.R. § 3.303. 

Generally, to establish service connection, there must be lay or medical evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the in-service injury or disease and the current disability. See38 U.S.C. § 1110; Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed .Cir.2009); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed.Cir.2004); 38 C.F.R. § 3.303 (2015).

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a) (West 2014); 38 C.F.R. § 3.303(a) (2015); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Moreover, where a Veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and a psychosis becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such diseases during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). Insofar as the appellant presents an argument of continuity of symptomatology, the U.S. Court of Appeals for the Federal Circuit recently held in Walker v. Shinseki that service connection can be based on continuity of symptomatology only with respect to the specific chronic diseases listed in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1337 (Fed.Cir. 2013). 

The credibility and weight of all the evidence, including the medical evidence, should be assessed to determine its probative value, and the evidence found to be persuasive or unpersuasive should be accounted for, and reasons should be provided for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

It is the Board's responsibility to determine whether a preponderance of the evidence supports the claim or whether the evidence is in relative equipoise, with the veteran prevailing in either event, or whether there is a preponderance of evidence against the claim, in which case the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In making that decision, the Board must determine the probative weight to be ascribed as among multiple medical opinions, and state the reasons and bases for favoring one opinion over another. See Winsett v. West, 11 Vet. App. 420, 424-25 (1998); see also Evans v. West, 12 Vet. App. 22, 30 (1998), citing Owens v. Brown, 7 Vet. App. 429, 433 (1995). This responsibility is particularly important where medical opinions diverge. The Board is also mindful that it cannot make its own independent medical determinations, and that there must be plausible reasons for favoring one medical opinion over another. See Evans at 31; see also Colvin v. Derwinski, 1 Vet. App. 171 (1991).

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102.

With regard to PTSD claims in particular, and in addition to the criteria above, service connection for PTSD requires: (1) medical evidence establishing a diagnosis of the condition pursuant to 38 C.F.R. § 4.125(a) (conforming to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-V)); (2) credible supporting evidence that the claimed in-service stressors occurred; and (3) a link, established by medical evidence, between the current symptomatology and the claimed in-service stressors. 38 C.F.R. § 3.304(f). 

Effective August 4, 2014, VA amended the portion of the Rating Schedule dealing with mental disorders so as to replace outdated references to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition
(DSM-V). See 79 Fed. Reg. 149, 45094 (August 4, 2014). As noted in greater detail below, the mental health records provide an Axis I diagnosis of PTSD, but it is not shown to be in conformance with the DSM-IV or DSM-V. Accordingly, the DSM amendments are not relevant to this appeal. 

If the evidence establishes a diagnosis of PTSD during service and the claimed stressor is related to that service, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the Veteran's service, then the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 

The evidence necessary to establish the occurrence of a recognizable in-service stressor event will vary depending upon whether a veteran engaged in "combat with the enemy." See Gaines v. West, 11 Vet. App. 353, 359 (1998). Participation in combat is determined on a case-by-case basis, and it requires that a veteran participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. See VAOPGCPREC 12-99 (October 18, 1999); Sizemore v. Principi, 18 Vet. App. 264, 273-74 (2004). 

If VA determines that a veteran engaged in combat with the enemy and his alleged stressor is combat-related, then his lay testimony or statement is accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence is required, as long as such testimony is found to be credible and "consistent with circumstances, conditions or hardships of service." See 38 U.S.C.A. § 1154(b) (West 2014); 38 C.F.R. § 3.304(f)(1); Zarycki v. Brown, 6 Vet. App. 91, 98 (1993). 

Effective July 12, 2010, VA amended its adjudication regulations governing service connection for PTSD by liberalizing, in certain circumstances, the evidentiary standard for establishing the required in-service stressor. Specifically, the final rule amends 38 C.F.R. § 3.304(f) by redesignating current paragraphs (f)(3) and (f)(4) as paragraphs (f)(4) and (f)(5), respectively, and by adding a new paragraph (f)(3) that reads as follows: 

"(f)(3) If a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of [PTSD] and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, 'fear of hostile military or terrorist activity' means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror." 

Such a location can be evidenced by awards such as the Iraq Campaign Medal or the Vietnam Service Medal. Lay testimony alone can be used to establish the occurrence of an in-service stressor in these situations. In other words, the new regulatory provision requires that: (1) A VA psychiatrist or psychologist, or contract equivalent, must confirm that the claimed stressor is adequate to support a diagnosis of PTSD; (2) the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service; and (3) the Veteran's symptoms are related to the claimed stressor. Id. The liberalizing criteria contained in the new § 3.304(f)(3) will be applied to PTSD service connection claims that are pending as of the effective date of the regulation (July 13, 2010) and to claims filed on or after this effective date.

Here, the Veteran has not contended that he engaged in combat with the enemy or that he served in a war zone, and the evidence does not show that the Veteran was exposed to hostile military or terrorist activity. While the Veteran indicated that he feared hostile military activity by virtue of being stationed in Berlin during the Cold War and on a remote island only 100 miles from Russia during the Cold War in the mid 1960's, there is no indication that he served in a location that was deemed to be a place of imminent danger. He did not serve in Vietnam, or in a location where there was a threat of hostile activity around him. He did not serve under circumstances involving actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft. Rather, the Veteran maintains that the environmental factors (including undesirable weather conditions and his proximity to Russia) as well as the isolation in Alaska, led to the development of PTSD. Thus, the special exceptions and lesser pleading requirements of 38 C.F.R. § 3.304(f)(2) and (f)(3) are inapplicable. 

Further, the Veteran was not diagnosed with PTSD in service. However, in support of his claim, the Veteran maintains that his symptoms began in service. 

A review of the Veteran's service treatment records (STRs) shows that he presented for treatment in August 1964 with symptoms of fatigue and inability to sleep. The handwritten entry appears to read, "Place seems to be bothering him now." He was prescribed Equanil 400 mgs, twice daily. There was no follow up treatment, and the Veteran's December 1964 discharge examination was negative for any complaints or findings of chronic fatigue, sleeplessness, or any psychiatric disorder. 

Thus, while the Veteran exhibited some symptoms of fatigue and sleeplessness, and may have felt as though his environment was the cause, the evidence does not show that the Veteran was diagnosed with PTSD during service. Moreover, given the lack of complaints at discharge, and in the ensuing months and years, his in-service symptoms appear to have been situational, acute, and transitory. As noted above, a VA examination was scheduled so that a qualified medical professional could address the issue of etiology, but the Veteran failed to report to that examination and did not provide good cause for such failure. 

When a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655(a),(b) (2015).

Even if the Veteran's in-service symptoms ultimately developed into PTSD, as is suggested by Vet Center records from 2009, there is no diagnosis of PTSD which is shown to be in conformance with the DSM. 

Post-service mental health therapy notes from a Vet Center in 2008 and 2009 note a possible diagnosis of PTSD. These records show that the Veteran was seen several times between November 2008 and October 2009 for psychological testing and individual therapy. These records consistently reveal that the Veteran reported experiencing extreme deprivation environmentally, physically, emotionally and socially during service in Alaska. The Vet Center counselor(s) noted current PTSD symptoms of irritability, sleep difficulties and mild depression, anxiety and readjustment issues. A March 2009 entry indicates that the test scores combined with a clinical interview indicate that the Veteran is likely experiencing mild PTSD symptoms, but not at a level of clinical significant impairment at that time. The report further notes that although the Veteran demonstrated a "sub-diagnosis" of PTSD, he was experiencing several stressors that may exacerbate his symptoms. 

There is no indication in the record that the Veteran received any mental health treatment prior to 2008, or since November 2009.

In support of his claim, the Veteran submitted a September 2012 memorandum from his Vet Center counselor, E.M. E.M. recorded the Veteran's reported history regarding his service in Berlin and St. Lawrence Island, Alaska. As noted above, the Veteran reported that this service in Berlin during the Cold War and on St. Lawrence Island (only 100 miles from Russia) during those unsettled and troubled times led him to fear for his life, and his sanity. He reportedly became depressed and fearful. The environment was barren, frigid and led to suffering from continual indoor living in a desolate area. The lack of light, or the prolonged light (depending on the season) was also a contributing factor. The Veteran also reported that there was excessive waste material being dumped in an unsanitary manner in a nearby bay, and believes that this pollution contributed to the physical and psychological illnesses of the men there. The Veteran reported that many soldiers had nervous breakdowns and he became lethargic and depressed. 

Based solely on the Veteran's reports, E.M. indicated an Axis I diagnosis of PTSD related to his service. E.M. noted current symptoms of intrusive thoughts and occasional nightmares of his experiences on St. Lawrence Island. He avoids all reminders associated with trauma and desolate environments. He feels estranged from others, and has a restricted range of affect. In addition, the Veteran reported irritability and hypervigilance. See September 2012 memorandum from E.M., a Salem Vet Center psychologist. 

In summary, the Vet Center records from 2008-2009, and the September 2012 memorandum from E.M. suggest that the Veteran may have PTSD based on his claimed stressful experiences during service. 

The Board finds, however, that the record does not contain a diagnosis of PTSD in accordance with 38 C.F.R. § 4.125. First, the Veteran's PTSD diagnosis is not based on a corroborated stressor and he did not serve in combat with the enemy or in a hostile area where there was a real threat of imminent danger or hostile military action. While the Veteran may very well have felt like he was losing his sanity in a remote area of Alaska, his stressors are not neither corroborated nor based on a fear of actual death or serious bodily injury from enemy forces. He did not serve under circumstances involving actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft. 

The purpose of the liberalized PTSD regulation was to eliminate the need for stressor corroboration for those servicemen who served during wartime in a place where enemy fire was occurring around them(such as sniper fire or rocket attacks near military installations), even if they did not actually engage in enemy fire. Such is not the case with this Veteran. 

Moreover, while there is no reason to doubt the Veteran's credibility with regard to the circumstances surrounding his service, the fact remains that he did not provide enough specific information to warrant an attempt at corroboration by JSRRC and there is no indication that the Vet Center counselors, included E.M. reviewed the Veteran's service treatment records and/or personnel file in conjunction with the diagnosis. Accordingly, the diagnosis is not an informed one. As noted above, the Veteran's service treatment records reflect that the Veteran reported no mental health problems at the time of his discharge, and there is no indication that the Vet Center counselors are aware of that fact; or, if they had been, whether the diagnosis would have been different. Similarly, while the Veteran's personnel records show that his service in Alaska was in a remote area, there is no indication in this file to suggest that the Veteran was completely isolated from the outside world, or that he served alone. Again, a review of these records may have had an impact on E.M.'s diagnosis. This is one of the reasons why the Board instructed the AOJ to afford the Veteran a VA examination in its August 2015 remand. In the remand directive, the examiner was asked to review the claims file in conjunction with the examination. 

Finally, the Veteran's Vet Center diagnosis of PTSD is not shown to have been diagnosed in accordance with 38 C.F.R. § 4.125(a) 2015. More specifically, the diagnosis must be in conformance with the DSM (either version IV or V in this case). DSM-IV lists 6 different criteria (A through F) that must be addressed in conjunction with the diagnosis of PTSD. DSM-V lists 8 different criteria (A through H) that must be addressed in conjunction with the diagnosis of PTSD. See e.g., Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), American Psychiatric Association, pp. 143-146 (2013). 

In this regard, Criterion A is exposure to actual or threatened death, serious injury, or sexual violence. In diagnosing the Veteran with PTSD, E.M. did not indicate any instance in which the Veteran was exposed to actual or threatened death, serious injury or sexual violence. Further, the Veteran has not reported exposure to actual or threatened death, serious injury or sexual violence. While mental health care providers are presumed to diagnose PTSD in accordance these DSM criteria (see Cohen v. Brown, 10 Vet. App. 128, 153 (1997)), the findings in this case do not show a fear of hostile military action or fear of actual death or serious injury. Accordingly, the Board finds that E.M's opinion that the Veteran has PTSD due to in-service stressors is not probative in this case. 

For all of these reasons, the Board finds that the criteria for entitlement to service connection for PTSD are not met. 

Certainly, there is no reason to doubt the credibility of the Veteran's statements regarding his circumstances of service. Nonetheless, the fact remains that E.M.'s diagnosis of PTSD for this Veteran is not a fully informed one, and the circumstances of the Veteran's service did not involve imminent fear, as explained above. 

In this regard, and as noted above, the Board remanded the case in August 2015 so that the Veteran could undergo a VA examination to determine the likely etiology of any acquired psychiatric disorder, including, but not limited to, PTSD. This was an opportunity to obtain a PTSD diagnosis in accordance with 38 C.F.R. § 4.125(a); based on a review of the entire record; however, the Veteran did not appear for that exam. 

Regarding any acquired psychiatric disorders other than PTSD, the record suggests that the Veteran has current symptoms of depression, anxiety, anger, sleeplessness, irritability and hypervigilance. In the August 2015 remand, the Board specifically requested a VA examiner to determine what acquired psychiatric disorders existed, and whether they had their onset during service or were otherwise related to service. However, as noted above, the Veteran failed, without good cause to appear for that examination. This is particularly significant with respect to his claim for an acquired psychiatric disorder other than PTSD because corroboration of a stressor is not at issue in claims involving acquired psychiatric disorders other than PTSD. 

As the record currently stands, the Veteran does not have a diagnosis of PTSD, in accordance with 38 C.F.R. § 4.125(a), based on a corroborated stressor; and there is no competent opinion linking any acquired psychiatric disorder to service. Lastly, the Veteran is not entitled to a presumption of service connection under 38 C.F.R. § 3.309(a) because there is no diagnosis of psychosis during service or to a compensable degree within the first post-service year. 

The resolution of issues that involve medical knowledge, such as the diagnosis of a psychiatric disorder and the determination of etiology when there is a delayed onset, requires professional evidence. In this case, the Veteran's lay statements are competent as to what he witness and experienced in service and how this made him feel. However, a determination of diagnoses and etiology of the claimed PTSD requires specialized training and is therefore not susceptible of lay opinions on etiology.

Accordingly, the preponderance of the evidence is against the claim and service connection for an acquired psychiatric disorder, to include PTSD, is not warranted. As the preponderance of the evidence weighs against the claim, the benefit of the doubt rule is not for application. 38 U.S.C.A. § 5107(b), 38 C.F.R. § 4.3. 

ORDER

Service connection for PTSD is denied. 

Service connection for an acquired psychiatric disorder is denied. 

____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs