# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2475

HAROLD DAYE, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     November 22, 2006   )

*Harold Daye, pro se.*

*Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Gayle E. Strommen*, Deputy Assistant General Counsel; and *Elle R. O' Flaherty*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge,* and LANCE and FARLEY[*] *Judges.*

FARLEY, *Judge*:   The pro se appellant, Harold Daye, appeals from an August 26, 2005, decision of the Board of Veterans' Appeals (Board or BVA) that denied entitlement to service connection for post-traumatic stress disorder (PTSD).  This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons set forth below, the Court will vacate the August 26, 2005, Board decision, and remand the matter.[1]

---

[*]Pursuant to 38 U.S.C. § 7257(b)(1), Judge John J. Farley, III, was recalled to service as a judge of the Court for a period of 90 days effective September 5, 2006.

[1]While the Court's Internal Operating Procedures (IOP) provide general guidance, they do not confer rights or obligations and may be modified by the Court.  *See* IOP Preamble.  Here, the Court has refrained from entering the 30-day stay contemplated by IOP II.(f) because of the Board's advancement of the appellant's claim on its docket pursuant to 38 U.S.C. § 7107 and 38 C.F.R. § 20.900(c) (2006), the appellant's advanced age, and the disposition of the appeal.

# I. Background

The appellant served on active duty in the U. S. Army from May to August 1946, and from October 1950 to July 1952. Record (R.) at 16. He served for 10 months and 25 days in Korea with the 159th Field Artillery Battalion and received the Korea Service Medal. *See* R. at 144. In November 2003, he filed a claim for entitlement to service connection for PTSD. R. at 121-24. In February 2004, he submitted a January 2004 private medical evaluation that diagnosed "Post-Traumatic Stress Disorder, Chronic, Severe" and reported that the appellant had given a history of "numerous horrific experiences and [having] witnessed injuries to and deaths of numerous fellow soldiers and others" in Korea. R. at 128-29. In response to a VA regional office (RO) request, the appellant submitted the following statement in support of claim:

> I served in the Korean War for about eleven months. I was discharged in July 1952. I was assigned to [Headquarters and Headquarters Battery, Division Artillery, 24th Infantry Regiment, 159th Field Artillery Battalion]. We were attached to the 25th Inf. Div. in Seoul, Korea. My [Military Occupational Speciality (MOS)] was Field Wireman (4641). I worked with a Forward Observer Team (FO). Our job was directing and adjusting artillery rounds on the enemy. I witnessed many of the enemy being injured or killed. Whenever the enemy spotted the location of our FO, they would direct incoming on us. We had [wounded in action (WIA) and killed in action ( KIA)], Pvt. McKinney was one such WIA, Exhibit A. I also knew Pvt. McDaniel, Exhibit A. He had worked security for our FO team but he was not working with our team the day that he got wounded. I never saw him after he was wounded. My Hillsborough high school classmate, James Thompson, Exhibit B[,] was also injured. I was not with him when he got hurt but I did see him after he was hurt. I was with James' [Commanding Officer] (I Company) when he died. I had tried to administer first aid to him. He died while I was working on him. I have tried to remember his name but I cannot. I do remember that he was a white officer. Most of the enlisted with the 24th Inf. Regt. [were] black.

R. at 141. Exhibit A accompanying the appellant's statement consisted of a copy of a list of the names of casualties from the 159th Field Artillery Battalion, apparently obtained from the Internet. Included on the list are the names of "PV2 Lindsey McDaniel" (seriously wounded on October 4, 1951, and separated for disability) and "PV2 Herbert McKinney" (seriously wounded on September 21, 1951, and returned to duty.) R. at 138. Exhibit B consists of a similar list of casualties from the 24th Infantry Regiment. Included is the name of James Thompson, Jr., from Orange County, North

Carolina, who was seriously wounded on June 20, 1951, and ultimately returned to duty. R. at 139. The appellant entered service from Orange County, North Carolina. R. at 144.

The RO requested that the Army "FURNISH PAGES FROM THE PERSONNEL FILE SHOWING UNIT OF ASSIGNMENT, DATES OF ASSIGNMENT, PARTICIPATION IN COMBAT OPERATIONS, WOUNDS IN ACTION, AWARDS AND DECORATIONS AND OFFICIAL TRAVEL OUTSIDE THE U.S." R. at 143. The response is recorded as: "STANDARD SOURCE DOCUMENT(S) ARE NOT AVAILABLE. OTHER DOCUMENTS ARE <<MAILED>>." *Id.* The "other documents" consisted of copies of the appellant's DD 214, Certificate of Release or Discharge, and his 1946 Certificate of Disability Discharge. R. at 144-45. In a July 2004 rating decision, the RO denied his PTSD claim. R. at 149-53. In its August 26, 2005, decision, the Board denied entitlement to service connection for PTSD. R. at 1-12.

## II. APPLICABLE LAW

To support a claim for service connection for PTSD, a claimant must present evidence of (1) a current diagnosis of PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between the current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f) (2006); *see Cohen v. Brown*, 10 Vet.App. 128, 138 (1997); *see also* 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 (2006) ("Schedule of ratings for mental disorders – PTSD"). Pursuant to 38 U.S.C. § 5103A, "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." Where, as here, an appellant's records are "NOT AVAILABLE" (R. at 143), the Secretary's duty to assist is heightened. *Washington v. Nicholson*, 19 Vet.App. 362, 369-71 (2005)(when service medical records are presumed lost or destroyed VA's duty to assist is heightened); *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991).

If the evidence establishes that the veteran engaged in combat with the enemy and his claimed stressor is related to that combat, the veteran's lay testimony alone generally is sufficient to establish the occurrence of the claimed in-service stressor. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(f); *Sizemore v. Principi*, 18 Vet.App. 264 (2004). If, however, the claimed stressor is not combat related, its occurrence must be corroborated by credible supporting evidence. *See Cohen*, 10 Vet.App. at 142. When a claim for PTSD is based on a noncombat stressor, "the noncombat

veteran's testimony alone is insufficient proof of a stressor." *Moreau v. Brown*, 9 Vet.App. 389, 396 (1996). Corroboration does not require, however, "that there be corroboration of every detail including the appellant's personal participation in the [activity]." *Suozzi v. Brown*, 10 Vet.App. 307, 311 (1997); *see also Pentecost v. Principi*, 16 Vet.App. 124, 128 (2002).

The Board's findings concerning combat status and the sufficiency of corroborative evidence are findings of fact that the Court reviews under the "clearly erroneous" standard of review pursuant to 38 U.S.C. § 7261(a)(4). *See Pentecost*, 16 Vet.App. at 129; *Moreau*, 9 Vet.App. at 395. "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Board must consider all evidence of record and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet. App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Where, as here, a veteran's records are lost, "the Board has a heightened duty to explain its findings." *Cromer v. Nicholson*, 455 F.3d 1346, 1351 (Fed. Cir. 2006); *see also Kowalski v. Nicholson*, 19 Vet.App. 171, 179 (2005); *Moore, supra*; *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991). The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); Gilbert, supra.

## III. Analysis

### A. 38 U.S.C. § 1154(b), "Engaged in Combat"

As the appellant's combat status determines whether or not his accounts of stressors require corroboration, that aspect of the Board's decision will be examined first. Although the appellant claims that he was part of a Forward Observer Team, assisted in and watched the direction of lethal fire upon the enemy, and was himself fired upon by the enemy, the Board found

> that the record does not support a finding that the veteran engaged in combat while on active duty. Although he reported various incidents while part of an FO team during the Korean War, a thorough review of his service medical and personnel records that are on file do not reflect that the veteran "*personally* participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality." VAOPGCRPEC 12-99 (Emphasis added.) Moreover, the record does not indicate he received any awards or citations, such as a Purple Heart or Combat Action Ribbon, which would confirm that he engaged in combat while on active duty. Thus, based on the evidence currently of record, it does not appear he is entitled to the benefit provided by 38 U.S.C.A. § 1154(b).

R. at 10.

The Board may have conducted a "thorough review," but it had to have been of an all-but nonexistent record. The record before the Court could not reflect that the appellant "*personally* participated" in combat in Korea because there are virtually no records from the appellant's service in Korea; as the RO was informed, such records were "NOT AVAILABLE." R. at 143. There are only records of the appellant's hospitalization for an appendectomy during artillery training at Fort Sill in February 1951 (R. at 84-101), and two records generated in Korea, one a dental record dated September 14, 1951, noting the appellant's unit as "C Btry, 159th FA Bn" (R. at 101), and the other from the 159th FA Battalion Aid station in December 1951.

"[W]hen VA is unable to locate a claimant's records, it should advise him to submit alternative forms of evidence to support his claim and should assist him in obtaining sufficient evidence from alternative sources." *Washington*, 19 Vet.App. at 370; *see also Dixon v. Derwinski*, 3 Vet.App. 261, 263 (1992). A remand is required here because there is no indication that the Board recognized, much less ensured compliance with, the Secretary's heightened duty to assist under 38 U.S.C. § 5103A. Indeed, none of the communications from the RO to the appellant refer to the possibility of securing evidence from alternative sources, *e.g.*, buddy statements, and no effort was

5

made to verify the appellant's claims through unit histories or other documents at the United States Armed Services Center for Research of Unit Records or other official sources. The record does not reflect any effort to verify the appellant's claim of combat service except for the single and largely unsuccessful request for his personnel records.

The Board did have one potentially relevant document before it, the appellant's DD 214, and the Board in part based its finding that the appellant did not engage in combat on the incontrovertible fact that the DD 214 "does not indicate he received any awards or citations, such as a Purple Heart or Combat Action Ribbon, which would confirm that he engaged in combat while on active duty." R. at 10. Indeed, receipt of a Purple Heart or a Combat Action Ribbon would confirm engagement in combat; the absence of such awards, however, does not preclude his having been in combat and the Board erred to the extent that it found to the contrary.

The lack of a Purple Heart Award proves only that this appellant did not suffer a wound in combat; it simply has no bearing on the issue of whether, as he claims, he participated in bringing fire upon the enemy or was fired upon. That the appellant did not receive a Combat Action Ribbon for his service in Korea during the Korean War proves even less, because that award has never been authorized for members of the appellant's branch of service, the U.S. Army.[2] *See* The Annual Defense Authorization Act, Public Law 106-65, October 5, 1999. Of even more striking significance is the fact that the Combat Action Ribbon was not even established until 1969 – almost two decades *after* the appellant's service in Korea and his separation from the Army on July 31, 1952. *See* SECNAVNOTE 1650, February 17,1969; *Gaines v. West*, 11 Vet.App. 353, 360 (1998). The Board therefore erred when it found that an appellant had not engaged in combat because a DD214 generated in 1952 did not contain an award created in 1969. "Back to the Future" may be a concept suitable for movies and theme parks but it cannot serve as the basis for denying the claims of veterans.

---

[2]Nor would this appellant, an *artilleryman*, have been eligible to receive the Combat Infantry Badge (CIB) or the Combat Medical Badge (CMB) which also establish engagement in combat. Only soldiers with an infantry Military Occupational Speciality (MOS) and assigned to an infantry or special forces unit or a member of the Medical Department assigned to a medical unit during combat would be eligible. *See* Section I, War Department Circular 209, October 27, 1943; ¶ 8-7, Army Regulation 600-8-22.

Thus, the Court's review of the Board's cursory, flawed, and incomplete explanation compels the conclusion that, in addition to failing to fulfill its heightened duty to assist, the Board also erred in failing to fulfill its concomitant duty to provide a thorough statement of reasons or bases under 38 U.S.C. § 7104(d)(1) for its finding that this appellant did not engage in combat. *See Cromer*, 455 F.3d at 1351; *Sizemore*, 18 Vet.App. 272 (remanded in part because of an inadequate statement of reasons or bases for finding that artilleryman was not engaging in combat when firing at the enemy). In that regard, the Court observes that "boilerplate" language of the sort that resides in all of our word processors and is increasingly finding its way into VA notice letters, Board decisions, and briefs in (even decisions of) this Court, can be an efficient and effective way of conveying information and conserving time, but only when it is used with precision. Just like a flower garden, "boilerplate" must constantly be cultivated, weeded, and pruned. Above all, the drafter must ensure that the "boilerplate" in the bouquet is chosen for relevance. That did not happen here where the Board's combat award "boilerplate" language is completely irrelevant to the appellant's claim.

### B. Corroboration of Stressors

Because the Board determined that the appellant was not a combat veteran, it required his claimed in-service stressors to be corroborated by credible supporting evidence. R. at 10; *see Cohen*, 10 Vet.App. at 142 (citing 38 C.F.R. § 3.304(f)). But the Board found "that there is *no* independent evidence to verify the veteran's account of any of the alleged in-service stressors. As there is no corroborating evidence, service connection is not warranted for PTSD." R. at 11 (emphasis added). Contrary to the Board's finding, however, there was evidence. The appellant claimed generally that he was shot at; witnessed many of the enemy being injured or killed; knew several soldiers who were wounded or killed; and administered first aid to an officer who died while he was working on him. He submitted extracts purporting to confirm the wounds and dates of injury of comrades he mentioned by name.

Perhaps the Board intended to find that the evidence was insufficient rather than nonexistent. If so, that would only highlight the Secretary's already-noted failure to fulfill the duty to assist the appellant, a duty that is heightened as a result of the missing records. *See Washington, supra.* In its decision, the Board referred to the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, and 38 U.S.C. § 5103A, but, as the appellant argues, there was no effort to aid him

7

in verifying the death of the commanding officer of the "24th Inf. Regt., Inf. Div., I Co" who the appellant claims died while the appellant tried to administer first aid. R. at 141; *see* Appellant's Br. at 6-7. Further, the Board found that the appellant did not provide sufficient details regarding his purported stressors, including specific dates and locations, which would warrant a request for verification through the United States Armed Services Center for Research of Unit Records or other official sources. The Board, however, did not explain why the details provided by the appellant, such as the date of Private McKinney's injury or the unit designation of the company commander, were insufficient. *Id*. Nor did the Board explain why it did not secure and review the history of the appellant's unit for possible alternative sources of evidence of combat or stressors. Had it done so, the Board might well have confirmed that the 159th Field Artillery Battalion was a highly decorated unit that "support[ed] the 24th Infantry Regiment through heavy fighting in six campaigns." *See* 25th Infantry Division Association, Field Artillery, Unit History, at www.25ida.org.

## IV. CONCLUSION

The Court holds that a remand is necessary because the Secretary did not satisfy his heightened duty to assist this appellant and the Board failed to provide an adequate statement of reasons or bases for its findings and conclusions. Noting that the Board advanced this appellant's claim on its docket pursuant to 38 U.S.C. § 7107 and 38 C.F.R. § 20.900(c) due to his advanced age, the Board also shall proceed expeditiously on remand in accordance with section 302 of the Veterans' Benefits Improvement Act, Pub. L. No. 103-446, 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by Board or Court ). *See Drosky v. Brown*, 10 Vet.App. 251, 257 (1997); *Allday,* 7 Vet.App. at 533-34. Upon consideration of the foregoing, the August 26, 2005, Board decision is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this opinion.