Citation Nr: 1228233 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-39 749 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) claimed as due to military sexual trauma.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

C. Fields, Associate Counsel

INTRODUCTION

The Veteran served on active duty from September 1973 to July 1974.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision of which the Veteran was notified in December 2007, issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. The Veteran testified at a formal RO hearing before a Decision Review Officer (DRO) in July 2009, and a transcript of that hearing is associated with the claims file. No Board hearing was requested.

The Veteran's July 2007 claim for VA compensation benefits referenced major depression and a bipolar condition, and he later referred to PTSD. The medical evidence includes various mental health diagnoses. The scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1, 4-6 (2009). Therefore, the issue on appeal has been recharacterized as stated above to encompass all currently diagnosed acquired psychiatric disorders, including but not limited to PTSD.

The Veteran also has a Virtual VA paperless claims file, which is a highly secured electronic repository that is used to store and review documents involved in the claims process. There are currently no pertinent documents in the paperless file that are not also in the paper claims file. 
 

FINDINGS OF FACT

1. The competent evidence of record includes various mental health diagnoses, but there is no diagnosis of PTSD.

2. The Veteran has not presented credible evidence of military sexual trauma during service. 

3. The weight of the evidence does not show that any current acquired psychiatric disorder, to include PTSD, was incurred or aggravated by military service.


CONCLUSION OF LAW

An acquired psychiatric disorder, to include PTSD, was not incurred or aggravated by military service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5017 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 4.125 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not in the record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 186 (2002). 

These notice requirements apply to all five elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Proper VCAA notice must be provided to a claimant prior to the initial unfavorable decision on the claim. Pelegrini v. Principi, 18 Vet. App. 112, 119-20 (2004). 

There is a heightened burden of notification in claims for PTSD based on in-service personal assault or MST. Specifically, VA must inform the claimant that he or she may submit alternative forms of evidence other than service records to corroborate the account of an in-service assault, and suggest potential sources for such evidence. The claimant should also be notified that evidence of behavioral changes following the alleged in-service assault may also constitute credible evidence to support the stressor. Additionally, VA must provide additional time for the claimant to submit such evidence after receipt of the personal-assault letter and, where appropriate, obtain evidence on the claimant's behalf. See 38 C.F.R. § 3.304(f)(5); Gallegos v. Peake, 22 Vet. App. 329, 335 (2008); Patton v. West, 12 Vet. App. 272 (1999). 

In this case, the Veteran was advised in an August 2007 letter, prior to the initial unfavorable rating decision, of the evidence and information necessary to substantiate his service connection claim, the responsibilities of the Veteran and VA in obtaining such evidence, and the evidence and information necessary to establish a disability rating and an effective date, in accordance with Dingess/Hartman. 

This letter also notified the Veteran of additional types of evidence other than service treatment records that may help to substantiate a claim based on personal assault or MST, and requested the Veteran to complete the form concerning personal assault (VA Form 21-0781a), which specifically lists different types of evidence. The Veteran returned this form in August 2007 and circled several of the specific examples of types of evidence to show purported behavioral changes, with an explanation as to how he believes they apply to him. However, he did not identify any additional sources of evidence, other than service records and VA and private medical records which have been obtained, in support of his claimed stressor. Additionally, the Veteran and his representative have shown actual knowledge of the other types of evidence that may be submitted and the requirements to establish his service connection claim by making arguments that certain evidence shows behavioral changes and could support his claimed stressor. They have also not argued that notice was deficient in any way in this case.

No Board hearing was requested, but the Veteran testified at a formal hearing before a DRO in July 2009. The DRO asked questions in an attempt to obtain evidence to substantiate the claim for PTSD based on MST, to include what happened during service and any asserted behavioral changes. Further, the Veteran discussed his asserted experiences and symptoms during service, as well as before and after service. The hearing focused on the elements necessary to substantiate the claim, and the Veteran and his representative demonstrated actual knowledge of such elements via questioning and testimony. Accordingly, to the extent that the DRO did not explain the bases of the prior determinations, or suggest the submission of evidence that may have been overlooked, the Veteran has not been prejudiced. See Bryant v. Shinseki, 23 Vet. App. 488 (2010) (discussing the requirements of 38 C.F.R. 3.103(c)(2)). Neither the Veteran nor his representative has argued that VA failed to comply with 38 C.F.R. 3.103(c)(2), or identified any prejudice as a result of the hearing. Rather, the Veteran has had ample opportunity to participate in the adjudication of his claim, and he and his representative have submitted pertinent evidence and made arguments in support of his contentions. See Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007). VA has substantially complied with the duties set forth in 38 C.F.R. 3.103(c)(2), consistent with Bryant. 

With regard to the duty to assist, the Veteran's service treatment and personnel records, as well as post-service VA and private treatment records, have been obtained and considered. In particular, records concerning private inpatient mental health treatment in the 1980s, as well as VA inpatient and outpatient treatment in the 1990s and from 2006 forward, are in the claims file. The Board notes that the Veteran has identified various dates of treatment during these periods. In January 2009, the RO requested any VA treatment records dated in the 1990s from the VA facility, and inpatient and outpatient mental health records from 1993 to 1994 were provided. Also in January 2009, the RO requested the Veteran to provide the identified non-VA records from the 1980s, or to complete an authorization to allow VA to obtain such records. In response, the Veteran provided treatment records dated in 1981. The Veteran also denied any treatment since the 1990s in a 2005 mental health evaluation. Accordingly, appropriate efforts were made to obtain any pertinent, outstanding medical records, and it appears that all available records were obtained. Furthermore, the Veteran has not identified any other records that may corroborate his alleged stressor of MST. Records pertaining to the Veteran's past and current disability benefits from the Social Security Administration (with favorable decisions dated in March 1995 and August 2008) are also in the claims file. As such, there is no indication of any pertinent, available, outstanding medical records that are necessary to decide the Veteran's claim. 

The Veteran has not been afforded a VA examination concerning his claim for VA compensation benefits, and his representative has argued that such an examination is necessary. See July 2012 brief. The Board notes that an opinion from a qualified medical or mental health professional that behavior changes during service are consistent with a reported personal or sexual assault may be considered credible supporting evidence for occurrence of the MST stressor, and evidence of behavioral changes during service may trigger the need for a VA examination. See Patton, 12 Vet. App. 272. However, for the following reasons, the Board finds that the duty to provide a VA examination has not been triggered in this case. 

As discussed below, the weight of the evidence fails to indicate that any currently diagnosed disorder may be related to service. Specifically, the evidence establishes various mental health diagnoses, and that the Veteran does not meet the criteria for PTSD. Further, the Board finds herein that the Veteran's report of MST is not credible when compared with the other evidence, to include service records, post-service treatment records, and statements made for VA and SSA claims concerning his behavior before, during, and after service, and the reasons for his mental health problems. The Veteran has not identified or submitted any evidence other than his service records and post-service VA and private treatment records in support of his claimed stressor, as contemplated by 38 C.F.R. § 3.304(f)(5). There is also no other alleged injury, incident, or stressor during service, or any other indication that a current mental health disorder may be related to service. As such, the Board finds that the medical evidence of record is sufficient to adjudicate the claim, and no VA examination or opinion is necessary. See 38 U.S.C.A. § 5103A(d); 38 C.F.R. §§ 3.159(c)(4), 3.304(f)(5); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). 

In the circumstances of this case, a remand would serve no useful purpose, as it would unnecessarily impose additional burdens on VA with no benefit to the Veteran. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). VA has satisfied its duties to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceedings. As such, the Veteran will not be prejudiced by a decision on the merits of his claim at this time.

II. Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Where a disease is diagnosed after discharge, service connection may be granted when all of the evidence, including that pertinent to service, establishes that the disease was incurred during service. 38 C.F.R. § 3.303(d). 

Generally, to establish direct service connection, there must be medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disability. 38 C.F.R. § 3.304; see also Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); Hickson v. West, 12 Vet. App. 247, 253 (1999). However, under C.F.R. § 3.303(b), the nexus element may be established based on medical or lay evidence where there is competent evidence of continuity of symptomatology. Barr, 21 Vet. App. at 307

To be entitled to service connection for PTSD, the record must include the following: (1) medical evidence establishing a diagnosis of the condition in accordance with 38 C.F.R. § 4.125; (2) credible supporting evidence that the claimed in-service stressor occurred; and (3) a link, established by medical evidence, between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f); see also Cohen v. Brown, 10 Vet. App. 128, 138 (1997). 

The evidence necessary to establish the occurrence of an alleged in-service stressor for PTSD varies depending on the circumstances of the particular case. The Board notes that the Veteran did not serve in combat, and there was no diagnosed mental health disorder during service, to include PTSD. See 38 U.S.C.A. § 1154(b); 38 C.F.R. 3.304(f) (providing for relaxed evidentiary standards where a veteran engaged in combat); 74 Fed. Reg. 14, 491 (March 31, 2009) (amending § 3.304(f) in cases where PTSD is diagnosed during service). Further, the Veteran did not serve in an environment involving possible hostile military or terroristic activity, nor does he assert any such stressor. See 75 Fed. Reg. 39,843 (July 13, 2010), with correcting amendments at 75 Fed. Reg. 41,092 (July 15, 2010) (amending § 3.304(f) in cases where PTSD has been linked to a stressor that is related to a fear of hostile military or terrorist activity, consistent with the types, places, and circumstances of service). Rather, the Veteran served at Fort Polk, Louisiana, and at then at Fort Benning, Georgia, for basic and airborne infantry training. He was separated from service after approximately 10 months, prior to completing airborne training. Accordingly, these relaxed evidentiary provisions are inapplicable.

If the above conditions are not met, as in this case, then a veteran's lay statements alone are not sufficient to establish a claimed PTSD stressor, and other corroborating evidence is necessary if the stressor cannot be verified. See Daye v. Nicholson, 20 Vet. App. 512, 515 (2006); Cohen, 10 Vet. App. at 142. 

When the claimed stressor is physical or sexual assault in service, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and, statements from family members, roommates, fellow service members or clergy. Evidence of behavior changes following the claimed assault is one type of evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. Credible supporting evidence may also consist of a medical opinion, based on review of the evidence, that the personal assault occurred. 38 C.F.R. § 3.304(f)(5). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant and resolve all reasonable doubt in the claimant's favor. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

In this case, the Veteran asserts that his current mental health disorder, to include PTSD, is due to sexual trauma during service, or MST (military sexual trauma). Specifically, he reports being anally raped while lying on his bunk at night approximately 3-4 weeks into basic training. He was discharged from service in July 1974 on grounds of unsuitability. 

The Veteran's service treatment and personnel records have been obtained. No mental health symptoms, defects, or diagnoses were reported or recorded in the September 1973 entrance examination. The Veteran was at Fort Polk for basic training from September 1973 to December 1973, during which he was recycled on at least one occasion due to physical problems (medical profile). He was seen by a social worker in November 1973, but there are no more specific notes as to what was discussed. 

In December 1973 the Veteran was transferred to Fort Benning, Georgia for airborne training, to be followed by assignment to the 82nd Airborne Division at Fort Bragg, North Carolina. The Veteran failed to complete airborne training (the record from that period cites being recycled due to absence without leave) and he was returned to Fort Polk.

In May 1974 the Veteran was treated at Fort Polk for dizziness, general weakness, and upset stomach after eating that were present for 2-3 years, with notations of anorexia and weight loss. 

In March, April, May, and June 1974, the Veteran was counseled several times by his superior officers for poor personal hygiene or appearance, failure to maintain his area to standards, problems grasping training, not making formations on time, failure to adhere to rules and standards, and lack of self-discipline. The Veteran went absent without leave (AWOL) from April 26 to May 17, 1974, and he was demoted for misconduct in May 1974. 

Also in May 1974, the Veteran was told by his superior that he had marginal performance thus far, and he replied "I have been trying to get out of the Army for 8 months." In June 1974, he was told that his performance was unsatisfactory in all respects, and he "again stated a desire to be released from the Army in any way possible." The Veteran's superior recommended that he be separated from service due to unsuitability for going AWOL for 25 days and returning only to avoid being dropped as deserted. The superior stated that the Veteran had a negative attitude toward the military which was apparent in all actions, in that he was "lazy, sloppy, clumsy and [did] not have the desire or ability to become a soldier. His only desire is to get out of the Army." Similarly, the Enlisted Qualification Record notes that he was not adaptable to airborne training for lack of motivation.

The Veteran underwent a mental status examination in June 1974, as ordered by the Adjutant General's Office. He was found to have normal behavior, to be fully alert, fully oriented, with mood within normal limits, clear thinking process, normal thought content, and good memory. Probable effectiveness of further rehabilitation was poor. The impression was no significant mental illness. The June 1974 separation examination records no clinical defects or diagnoses, and the Veteran reported that he was in "fair health." He had been treated for several physical problems while in service. The Veteran received a general/under honorable conditions (UHC) discharge due to unsuitability effective in July 1974.

Pertinent post-service medical evidence includes private inpatient treatment records from F.S. Hospital dated in 1981, VA inpatient and outpatient treatment records dated in 1994, and VA outpatient treatment records dated from 2006 forward. There are also pertinent medical records and determinations from the SSA dated from 1994 to 1995 and from 2005 to 2008, as well as a VA examination for nonservice-connected pension purposes dated in February 2007.

Prior to February 2007, the Veteran's mental health treatment records and evaluations include repeated complaints of problems during his childhood and teen years. Specifically, he reported being sexually abused by a stranger or friend of his mother at some point between ages 6 and 8, as well as emotional, verbal, occasional physical abuse, and possible sexual abuse by his mother throughout his childhood. The Veteran reported being left alone to raise himself as a child while his mother was out with other men and his stepfather was at work. The Veteran also reported drinking heavily starting at age 11 or 12 and frequently using multiple illicit drugs (identified as speed, pot, hash, white cross, and purple haze) starting around age 15. He reported being arrested as a teen for being a runaway and for shoplifting, and attempting suicide on several occasions (by jumping off a house, jumping off a truck, and taking pills). The Veteran dropped out of high school in 9th or 10th grade and later obtained a GED before joining the Army at age 17. See, e.g., records from F.S. Hospital dated in January and February 1981, VA inpatient and outpatient records dated from September to November 1994, SSA psychological or mental health examinations dated in September 1994 and December 2005.

In addition to the above problems, the Veteran also complained of marital, home, and/or financial difficulties at the times of treatment. At F.S. Hospital in 1981, he reported being distressed about his home situation and that "things are closing in around me." The diagnosis at discharge from inpatient treatment was adjustment reaction with depression. When self-reporting this prior treatment to a VA provider in September 1994, the Veteran stated that he was treated for "nervous exhaustion and depression." Similarly, when describing this prior treatment during the December 2005 SSA mental status examination, the Veteran stated that he had a "nervous breakdown" and his "world fell apart" because his marriage was going sour, he was alone, and he was working too many jobs. 

In September and October 1994 (for VA treatment and SSA evaluations), the Veteran reported having a low mood for a few months because he lost a job in Texas after going through training and finding out he was unqualified, with resulting financial difficulties, as well as marital difficulties. He also reported having low libido for one year for treatment purposes. In September 1994, the SSA mental health evaluator diagnosed depression not otherwise specified (NOS) with anxiety and passive-aggressive personality with somatization. The SSA examiner concluded that the Veteran had unlimited or very good ability to follow work rules, relate to coworkers, deal with public, interact with supervisors, and maintain personal appearance. An SSA psychiatric review summary also notes affective disorder with multiple head traumas over the course of his life, and that the Veteran went to travel agent school and had problems with concentration. 

In a November 1994 discharge summary (for the October 1994 inpatient treatment), the VA provider diagnosed adjustment disorder, as opposed to bipolar disorder as initially thought upon admission. The provider noted that the Veteran settled down once the staff agreed that he was not employable and needed to stay for treatment. In a November 1994 day treatment evaluation, a VA provider noted that the Veteran had a long history of psychiatric disturbance and shaky relationships, with a history of childhood emotional, physical, and sexual abuse at the hands of his mother. The Veteran had grossly exaggerated his problems in diagnostic testing, which prevented diagnostic refinement. The provider stated that it may be that given his early abuse and neglect, the Veteran may feel that he has to scream and exaggerate to be heard.

At the December 2005 SSA mental status examination, the Veteran reported his prior treatment in the 1980s and 1990s, and stated that he was currently under a lot of financial pressure. He again reported difficulties during childhood, and he denied any treatment since the 1990s. The Veteran reported going to college for one year to study business administration and accounting, but that his grades had dropped due to family worries and being unable to handle the workload. He denied any arguments with supervisors or coworkers, stating that he walks away if he gets angry. The SSA examiner noted that the Veteran alleged bipolar disorder, and diagnosed major depressive disorder, intermittent explosive disorder, and phobia. 

The Veteran did not mention any problems pertaining to military service during private inpatient treatment in January to February 1981, the September 1994 SSA psychological examination, or the December 2005 SSA mental status examination. The Veteran did report difficulties with service during the October 1994 VA inpatient treatment. However, he did not reference any specific incident, to include any MST. Rather, the Veteran reported that he left the military because he couldn't stand the stress. He stated that he was discharged due to incompatibility because he had trouble with commanders and resented being treated like "some little idiot," stating that he also went AWOL. A November 1994 VA discharge summary notes that the Veteran presented with a chief complaint of rage, that he reported significant difficulties during his teen years, and that he was discharged from the Army after less than a year because he was unable to cope with stress and pressure.

The Board notes that the Veteran filed claims for VA nonservice-connected pension in January 1993 and February 1994. In each of these claims, he listed several physical disabilities, but he did not reference any mental health disorder, to include PTSD, or any alleged MST. Pension was eventually granted in a September 1995 rating decision, effective as of the January 1993 claim, based on multiple medical disabilities and depression NOS. Similarly, the Veteran was initially granted SSA disability benefits based on multiple physical problems and affective disorder in a March 1995 fully favorable decision. These benefits were discontinued after the Veteran found employment for several years. He reapplied for SSA benefits in 2005. That claim was initially denied in April 2006, but SSA benefits were granted after an appeal, with a disability onset date of October 2005. The Veteran also applied for renewed or increased VA nonservice-connected pension benefits in October 2006. He again reported multiple medical conditions as preventing him from working, stating that he was in the process of an SSA appeal. He also reported being diagnosed with bipolar disorder in the 1990s, and that he had been treated for depressive disorder at F.S. Hospital and at the Minneapolis VA facility. 

Despite prior VA and private mental health treatment and evaluations, the first time the Veteran mentioned any alleged MST or anal rape during service was during the February 2007 VA examination for nonservice-connected pension purposes. After he was granted nonservice-connected pension effective as of October 2006, he applied for service-connected disability benefits in July 2007 based on this alleged incident during service. Thereafter, the Veteran referenced the alleged MST during VA treatment sessions in August 2007, October 2008, and November 2008. 

Similarly, the Veteran did not mention any alleged assault during service during development of his SSA claims until a May 2008 SSA hearing, after his claim for VA compensation benefits had been denied. As noted above, there was no mention of any problems during service, to include any MST or anal rape, during the September 1994 or December 2005 SSA mental health evaluations. However, during a May 2008 SSA hearing (as summarized in the August 2008 SSA fully favorable decision), the Veteran testified that he was "medically discharged" from the military after being assaulted by another soldier, and that he has flashbacks and nightmares concerning the assault that are less frequent than before. The Board notes that this testimony is inconsistent with the Veteran's service records, as well as his VA and private records. In particular, he was not medically discharged from service but, rather, was discharged for unsuitability. Further, there has been no other reference to any flashbacks or nightmares related to service, to include during treatment sessions, mental health evaluations, or in support of his VA appeal. 

In an October 2006 VA treatment session focused on physical disabilities, the Veteran had a positive screen for depression and a negative screen for PTSD. During the February 2007 VA examination for nonservice-connected pension purposes, the Veteran reported his prior mental health treatment and his problematic childhood, including sexual abuse, verbal and physical abuse, neglect, dropping out of high school, heavy drinking and use of drugs as a teenager. The Veteran also reported, for the first time, being anally raped by a fellow soldier during basic training, stating that he didn't report the incident and he had a hard time adjusting afterwards, eventually leading to his discharge due to incompatibility. The Veteran further reported having a very good marriage with his first wife from 1978 until she died of cancer in 2004, and arguing frequently with his current wife. He was noted to be dressed neatly but casually, although he reported neglecting his personal hygiene at times. The examiner opined that the Veteran's anxiety symptoms were much more prominent than his depressive symptoms. There were some symptoms of PTSD, but the examiner opined that the Veteran did not fully meet the criteria for a PTSD diagnosis. The examiner stated that the Veteran had a traumatic child and that the "alleged" MST "may have aggravated" these symptoms. The examiner concluded that anxiety disorder NOS was the best diagnosis at that time. 

In subsequent VA treatment sessions, the Veteran continued to report marital difficulties, as well as abuse and other problems during his childhood and teen years consistent with the above summarized evidence, including heavy drinking and frequent drug use (identified as pot, LSD, and speed). The Veteran reported an attempted sodomy during service and stated that he was discharged from the Army after approximately 5-6 weeks before completing basic training due to incompatibility as a result of this incident. The provider noted that this report of the timing of discharge was inconsistent with records showing that he was in service for 10 months, which would have included more than basic training. The provider diagnosed partner relational problems and bipolar I disorder/depressed. See, e.g., August 2007 record, November 2008 mental health intake summary.

In statements in support of this VA appeal, the Veteran has reported that his hygiene and behavior worsened during service as a result of the alleged MST, including decreased concentration and difficulty following orders. He states that he did not report the event or seek treatment because he was young and embarrassed. He further states that he no longer wanted to be in the military due to pain and fear, and he went AWOL shortly before being discharged on grounds of unsuitability. The Veteran contends that he had no emotional, behavioral, or mental health problems prior to entering service in September 1973, and that he has had problems since October or November 1973 as a result of the alleged MST. He states that he did not have any prior problems with drugs or alcohol, and that he turned to drugs and alcohol immediately after service to forget the incident. The Veteran also reports having problems with sexual intimacy or thinking that sex is "dirty" or "repulsive," problems with authority figures, and being fearful of people close to or behind him since the alleged MST. He also reports problems with trust, self-esteem, and hygiene. The Veteran states that he had VA and private mental health treatment over the years as a result of the MST in service, but that he did not talk about the MST during inpatient treatment at F.S. Hospital (in the 1980s) or during VA inpatient treatment in Minnesota (in the 1990s) because he was still unable to face it then. See, e.g., July 2007 claim, August 2007 stressor form (VA Form 21-0781a), January 2008 notice of disagreement and statement, July 2009 hearing transcript.

In an August 2007 PTSD stressor form for personal assault (VA Form 21-0781a), the Veteran circled the following examples of behavioral changes in support of his claim: visits to medical, counseling clinic, or dispensary without specific diagnosis or ailment; sudden requests for change in occupational series or duty assignment; changes in performance and evaluations; depression, panic, or anxiety without identifiable cause; increased or decreased use of prescription medications; substance abuse such as alcohol or drugs; increased disregard for authority; obsessive behavior such as overeating or under eating; and unexplained economic or social behavior changes. The Veteran then stated that he was on more medications for pain and depression, he went through an "alcohol and drug stage" and goes on "binges," he hates sexual activity of any kind, is more reserved, and is not as trusting.

During the July 2009 DRO hearing, the Veteran admitted that he was sexually abused as a child, as indicated in other evidence of record. He asserted that he "bottled it up inside" and did not have any emotional or behavioral problems as a result of that incident. The Veteran also admitted that the other evidence of record indicates that he started using drugs and alcohol at about age 11. However, he testified that, as he now thinks back on that time, he really loved parochial school and things "weren't really bothering [him]" at the time. He stated that he was only doing some "social drinking" but wasn't really "into drugs or anything else."

The Veteran relies on his own statements, service records, VA and private records, and SSA records, as summarized above, in support of his allegation of MST during service. He has not submitted any other corroborating evidence.

Considering all evidence of record, the Board finds that the Veteran is not entitled to service connection for an acquired psychiatric disorder, to include PTSD claimed as due to MST. The Board first notes that the Veteran and his representative are not competent, as lay witnesses, to offer an opinion as to his current mental health diagnosis or the etiology of causation of any such disorder. Rather, such questions require specialized knowledge, training, or experience due to the complex nature of mental illness. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Barr, 21 Vet. App. at 308; Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992). However, there is medical evidence concerning the Veteran's diagnoses. 

Specifically, the Veteran has not been diagnosed with PTSD. Rather, an October 2006 VA screen for PTSD was negative. Further, the February 2007 VA examiner for nonservice-connected pension purposes noted that, while there were some symptoms of PTSD, the Veteran did not meet the criteria for a PTSD diagnosis, and the better diagnosis was anxiety disorder NOS. VA has adopted the diagnostic criteria for mental disorders, including those related to stressors, as set forth in THE AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) (DSM-IV). See 38 C.F.R. § 4.125. As discussed above, mental health diagnoses including adjustment reaction with depression; depression NOS with anxiety and passive-aggressive personality with somatization; adjustment disorder (changed from an initial diagnosis of bipolar disorder after inpatient treatment); major depressive disorder, intermittent explosive disorder, and phobia (where the Veteran alleged of bipolar disorder); anxiety disorder NOS; and partner relational problems and bipolar I disorder/depressed have been provided over the years. 

The Board has considered whether any of the diagnosed mental health disorders have been linked to service. See Clemons, 23 Vet. App. at 4-6. In this regard, the Veteran indicated during the July 2009 hearing that none of his providers have told him that his current disorder is due to service, to include the alleged MST. The Board notes that the February 2007 VA examiner diagnosed anxiety disorder NOS for the purposes of nonservice-connected pension, and stated that the Veteran had a traumatic childhood and that the "alleged" military sexual trauma "may have aggravated" that condition. However, VA is not required to grant service connection for PTSD (or other acquired psychiatric disorder) just because a physician or other health care professional accepts a claimant's description of experiences during military service as credible and diagnoses PTSD due to such experience or stressor. Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). While the adequacy of a reported stressor to cause PTSD is a medical determination, the existence or occurrence of the event alleged as a stressor that caused PTSD is an adjudicative determination. Zarycki v. Brown, 6 Vet. App. 91, 97-98 (1993).

The Board notes that the Veteran is competent to report that he was sexually assaulted during service because this alleged incident is factual in nature and would be within his realm of personal experience. Barr, 21 Vet. App. at 307; Grottveit v. Brown, 5 Vet. App. 91, 93 (1993); Layno v. Brown, 6 Vet. App. 465 (1994). He is also competent to report an absence of observable symptoms of a mental health disorder prior to an in-service incident, continuous symptoms after the alleged in-service incident, and treatment for such symptoms. Jandreau, 492 F.3d at 1376-77; Layno, 6 Vet. App. 465. However, VA adjudicators must also determine whether competent evidence is credible, and weigh the lay and medical evidence submitted. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). VA may not determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence; however, the absence of contemporaneous medical evidence may be weighed against the lay evidence. Id. 

In determining credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498, 511 (1995). VA may not discredit a veteran's testimony simply because he or she is an interested party and stands to gain monetary benefits; however, personal interest may affect the credibility of the evidence. Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991).

Considering all lay and medical evidence of record, the Board finds the Veteran to be not credible with regard to the occurrence of the alleged MST. The Board particularly notes that the record documents consistently poor motivation and performance; thus, there are no demonstrated behavior changes indicative of physical assault or MST.

Review of the record indicates the Veteran only reported the alleged MST for the purposes of obtaining VA monetary benefits in 2007, or under circumstances indicating interest or bias. As discussed in detail above, prior to 2007 the Veteran consistently complained of abuse and behavioral problems during his childhood and teen years, as well as contemporaneous marital, financial, and home difficulties leading to exhaustion or depression. These statements were made for both VA and private treatment purposes, as well as for the purposes of obtaining previous and current SSA benefits. The Veteran's only references to problems during military service prior to 2007, including for treatment purposes, concerned dealing with stress or pressure and not liking how he was treated by authority figures. See Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (statements made for the purposes of medical treatment may be afforded greater probative value because there is a strong motive to tell the truth in order to receive proper care). These could also be reasons for a social work session, behavioral problems, going AWOL, and trying to get out of the military. Indeed, the Veteran was found to have mood within normal limits and no significant mental illness during a June 1974 mental status examination. 

Significantly, although the Veteran was very consistent in reporting heavy drinking and drug use in his teens and a bad childhood, including sexual abuse, for both VA and private treatment purposes and VA and SSA evaluations, the Veteran tried to negate this evidence during the July 2009 DRO hearing, after his claim for VA compensation had been denied in November 2007. Indeed, the Veteran even reported being sexually abused, a difficult childhood, dropping out of high school, and heavy drinking and drug use as a teen during the February 2007 VA examination. However, during the July 2009 hearing, he admitted that the other evidence of record reflected such problems, but he claimed that he did not actually have any problems with drinking, drugs, or behavior prior to service, and that such problems only began after his alleged MST. Further, the Veteran claimed during a November 2008 VA treatment session that he was discharged from service after only 5-6 weeks and prior to completing basic training, due to the alleged MST, which contradicts service personnel records that clearly show the Veteran served more than 9 months before being discharged. These statements weigh heavily against the Veteran's general credibility because they are internally inconsistent, inconsistent with the other evidence of record, and were made under circumstances indicating interest or bias. He has also not provided any other evidence, other than his own lay statements, to support his allegation of MST during basic training.

Additionally, the Veteran's assertions of having problems with sexual intimacy and authority figures since the alleged MST during service for the purposes of this appeal are also inconsistent with the other evidence of record. For instance, he reported having low libido for one year for treatment purposes in 1994. He was also noted to have no problems with coworkers or supervisors during an SSA evaluation in 1994. Again, these statements are more probative because they were made for treatment purposes and prior to the denial of the Veteran's claim for VA benefits.

In summary, while the February 2007 VA examiner stated that the "alleged" MST during service "may have" aggravated the Veteran's condition after his problematic childhood, this does not establish a link to service for any current mental health diagnosis. Rather, the Board finds the Veteran's reports of MST during service to be not credible, for the reasons stated above, even when considering the possible evidence of behavior changes during service. He has reported no other incident or event during service as related to any current mental health disorder. Further, there is no competent evidence indicating that a current condition may be related to service. 

Therefore, the preponderance of the evidence is against service connection for an acquired psychiatric disorder, to include PTSD claimed as due to MST. As such, the benefit of the doubt does not apply, and the claim must be denied. 38 C.F.R. § 3.102.


ORDER

Service connection for an acquired psychiatric disorder, to include PTSD claimed as due to military sexual trauma, is denied.



____________________________________________
JOHN H. NILON
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs